DECISION
{¶ 1} James L. McGill filed this action in mandamus seeking a writ of mandamus which compels the Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and which compels the commission to grant the compensation.
 {¶ 2} In accord with Loc.R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. *Page 2 
The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the request for a writ.
 {¶ 3} Counsel for Mr. McGill has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for a full, independent review.
 {¶ 4} In 1981, Mr. McGill injured his back while employed as a laborer for Clark Brothers Felt Co., Inc. His claim has been recognized for "right lower back; herniated nucleus pulposis L5-S1." His injuries have led to two surgeries and left him capable of sedentary employment with restrictions on stooping, bending, climbing, crawling and operating heavy equipment.
 {¶ 5} Mr. McGill's work history includes employment as a dishwasher and material handler. He has worked also at temporary jobs. In reviewing his application for PTD compensation, a staff hearing officer ("SHO") made no mention of any transferable skills, but found Mr. McGill's age and high school education to be an asset. The SHO repeatedly noted that Mr. McGill had not engaged in rehabilitation services and seems to have viewed that as a negative. However, the SHO felt Mr. McGill could perform unskilled sedentary work and could benefit from on-the-job training.
 {¶ 6} In his objections to the magistrate's decision, counsel for Mr. McGill complains that the SHO and the magistrate should not view Mr. McGill's failure to pursue rehabilitation earlier as a negative because Mr. McGill had his medical condition *Page 3 
deteriorate markedly about a few years ago. Mr. McGill had the ability to return to his former employment without additional skills being acquired until his condition deteriorated.
 {¶ 7} We acknowledge that under these circumstances, the failure to pursue rehabilitation services is a neutral factor. Had Mr. McGill pursued opportunities to increase his skills, that pursuit would have been a positive consideration. However, his failure to pursue these opportunities when he already had the skills necessary for full-time employment is not a negative. This does not end our review of the issues before us. Mr. McGill is medically capable of sedentary employment. He has at least average intelligence. He is still relatively young (mid 40's) such that he could be expected to acquire new skills via on-the-job training or other skill training. Because he can be expected to have many years in the workforce, an employer could be expected to view his age as an asset. The first set of objections is overruled.
 {¶ 8} In the objections, counsel for Mr. McGill also contests the failure of the SHO to discuss transferable skills. Transferable skills are not automatically required for unskilled sedentary work, especially when the injured worker has the intellectual ability to complete high school and is still in his mid 40's. The second set of objections to the magistrate's decision is overruled.
 {¶ 9} We adopt the findings of fact and conclusions of law contained in the magistrate's decision. *Page 4 
 {¶ 10} As a result of our independent review, we deny a writ of mandamus which would compel the commission to vacate its order denying PTD compensation for James L. McGill.
Objections overruled; writ denied.
 BROWN and BOWMAN, JJ., concur. BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 5 
 APPENDIX A MAGISTRATE `S DECISION IN MANDAMUS {¶ 11} In this original action, relator, James L. McGill, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 6 
Findings of Fact: {¶ 12} 1. On April 28, 1981, relator sustained an industrial injury while employed as a laborer for respondent Clark Brothers Felt Co., Inc., a state-fund employer. On that date, relator injured his lower back when he slipped and fell on a wet floor. The industrial claim is allowed for "right lower back; herniated nucleus pulposus L5-S1," and is assigned claim number 81-44735.
 {¶ 13} 2. Relator was 20 years of age on the date of his industrial injury. He last worked during 1982.
 {¶ 14} 3. Relator has had two back surgeries related to his industrial injury. His first surgery occurred in 1989. His second surgery occurred in March 2004, and was performed by Daryl R. Sybert, D.O. The second surgery is described by Dr. Sybert as an "interbody fusion at L5-S1 for lumbar disk herniation."
 {¶ 15} 4. On July 21, 2005, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by Marc W. Whitsett, M.D., who wrote:
 The functional limitations solely due to the allowed physical conditions in this claim are as follows: he can frequently lift up to 5 pounds, occasionally up to 20 pounds, but should avoid lifting and carrying over 20 pounds. He can occasionally bend and stop [sic], but should not crawl or climb. He can frequently reach. He has total restriction with driving an automobile in the workplace and unprotected heights. He can be around machinery, has no restrictions with regards to temperature and humidity or dust fumes and gases. He can sit up to an hour, stand up to an hour, walk up to an hour as long as he is able to transition his position frequently in an 8-hour day sitting 6 hours and standing and walking up to an hour or two depending on comfort level. He can use his hands for simple grasping, pushing and pulling *Page 7 
arm controls and fine manipulation tasks. He should not use his feet in repetitive movements of leg controls. In my medical opinion he is at maximum medical improvement and these are permanent restrictions but is a candidate for vocational rehabilitation in the form of job retraining and job search. This does not preclude MMI.
 {¶ 16} 5. During June and July 2005, relator was evaluated for vocational rehabilitation by Rehabilitation Concepts, Inc. In a report dated July 18, 2005, Rehabilitation Concepts, Inc., concluded that relator "is not a viable candidate for vocational rehabilitation programming."
 {¶ 17} 6. On November 4, 2005, relator filed an application for PTD compensation. In support, relator submitted a report dated October 15, 2005, from Steven Tanzer, D.O., stating:
 I cannot state strongly enough that Mr. McGill is unemployable to the type of work that he did, and currently based on his age, education and work history, I feel that Mr. McGill should be considered permanently and totally disable[d].
 {¶ 18} 7. On January 5, 2006, at the commission's request, relator was examined by James H. Rutherford, M.D., who wrote:
 * * * It is my medical opinion that Mr. James L. McGill has a 28% permanent partial impairment of the whole person as a result of the claim allowances of Claim #81-44735. This is based on a DRE Category V impairment of the lumbosacral spine, with the reference being Table 15-3 on p. 384. Mr. McGill has had a fusion at the L5-S1 level, and he still has evidence of radiculopathy in his clinical examination.
 * * * Based only on the claim allowances of Claim #81-44735 and the orthopedic evaluations related to those claim allowances, it is my medical opinion that Mr. James L. McGill is capable of work activities, and I've indicated in the *Page 8 
Physical Strength Rating Form that he is limited to sedentary work activities.
 {¶ 19} 8. Also, on January 5, 2006, Dr. Rutherford Completed a Physical Strength Rating form on which he indicated that relator is capable of sedentary work. He indicated further limitations: "No stooping, bending, climbing or crawling. Can drive for his own transportation, but not heavy equipment."
 {¶ 20} 9. Following an April 26, 2006 hearing, a staff hearing officer ("SHO") issued an order stating:
 This order is based upon reports from Dr(s). Sybert, Whitsett and Rutherford.
 A review of the information on file shows that this claim arose as a result of a slip and fall incident on 04/28/1981. At that time, the injured worker was age 20. There have been two surgical procedures in the claim, a laminectomy in 1989 and a fusion procedure in March of 2004.
 On file is a report dated 03/29/2005 from Dr. Sybert, the physician who performed the injured worker's fusion surgery. In that report, Dr. Sybert indicated that he estimated that the injured worker would require a 20 pound lifting restriction.
 Also on file is a report dated 07/21/2005 from Dr. Whitsett. Dr. Whitsett performed an examination on the question of extent of disability on behalf of the Bureau of Workers' Compensation. Dr. Whitsett did find the injured worker to be at a level of maximum medical improvement. Dr. Whitsett further opined that the injured worker could frequently lift up to 5 pounds and occasionally lift up to 20 pounds. Dr. Whitsett further commented that the injured worker could occasionally bend and stoop, and that he could drive an automobile for his own transportation. The injured worker would be able to be around machinery, with sitting, standing and walking restrictions of an hour at a time each.
 Lastly, the injured worker was examined on behalf of the Industrial Commission on 01/05/2006 by Dr. Rutherford, an orthopedic specialist. Dr. Rutherford reviewed the information *Page 9 
on file and conducted a thorough physical examination. It was Dr. Rutherford's opinion that the injured worker would be limited to sedentary activities, with occasional standing and walking. Dr. Rutherford suggested that the injured worker could lift up to 10 pounds occasionally, but that he could not do stooping, bending, climbing or crawling for work activities. The injured worker could drive for his own transportation but could not drive heavy equipment. Dr. Rutherford noted that the injured worker does have satisfactory use of his upper extremities.
 Vocationally, the injured worker was only age 20 when this injury occurred, and he is currently age 45. An individual of this age would ordinarily be expected to have up to 20 more years remaining in the work force. The injured worker did complete high school in 1979. As a work history, the injured worker has been employed as a dish washer, as a material handler and as a worker at temporary jobs. There was a rehabilitation evaluation in the year 2005, at which time it was found that the injured worker was not a candidate for vocational rehabilitation services. However, it can not be ignored that the injured worker was very young when this injury occurred, and that there was not rehabilitation activity early on in this claim.
 The injured worker's age is found to be a distinct asset. Likewise, he does have a high school education. The injured worker's work history is somewhat limited to manual types of jobs, but he was only in the work force for a short period of time before this injury occurred. Injured workers do have some responsibility as far as participating in rehabilitation services and trying to improve their position, especially when they are injured at a young age. This has not been done in this case.
 In summary, it is found that the injured worker retains the physical capacity to perform sedentary work, within the restrictions given by Dr. Rutherford. This claim does involve only the injured worker's low back condition, with the remainder of his physical being not affected by this claim. Vocationally, and as more fully explained above, it is found that the injured worker has not participated in rehabilitation services which, if undertaken sooner, may have improved his employment potential. Even so, at the injured worker's *Page 10 
current age, it is found that he does maintain the potential to perform unskilled sedentary work and to benefit from on-the-job training, and to adapt to employment within his claim related restrictions. It is therefore found that the injured worker is not permanently and totally disability [sic] due to the allowed conditions in this claim.
 {¶ 21} 10. On February 21, 2007, relator, James L. McGill, filed this mandamus action.
Conclusions of Law: {¶ 22} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 23} For its threshold medical determination, the commission, through its SHO, determined that the industrial injury permits sedentary work based upon the report of Dr. Rutherford. Here, relator does not challenge the commission's determination that he is medically able to perform sedentary work. However, relator does challenge the commission's analysis of the nonmedical factors.
 {¶ 24} The Supreme Court of Ohio has repeatedly held that a claimant's failure to undergo rehabilitation or retraining can be a factor for the commission's consideration in a PTD adjudication. State ex rel. Wilsonv. Indus. Comm. (1997), 80 Ohio St.3d 250; State ex rel. Wood v. Indus.Comm. (1997), 78 Ohio St.3d 414; and State ex rel. Bowling v. NationalCan Corp. (1996), 77 Ohio St.3d 148.
 {¶ 25} The Wilson court states, at 253-254:
 We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to- *Page 11 
work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's non-participation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized.
 {¶ 26} In its analysis of the nonmedical factors, the commission, through its SHO, stated that, although relator underwent a vocational rehabilitation evaluation in 2005, "it can not be ignored that the injured worker was very young when this injury occurred, and that there was not rehabilitation activity early on in this claim." Later, the SHO found that, had rehabilitation services been undertaken sooner, it may have improved relator's employment potential. Relator contends that these findings regarding the failure to seek out rehabilitation earlier constitute an abuse of discretion.
 {¶ 27} According to relator, he was under no obligation to seek out vocational rehabilitation early on in his claim because there was allegedly no indication early on in his claim that he would become unable to perform the work he had previously done. According to relator, it was not until the year 2001, some 20 years after the injury, that his allowed conditions increased in severity. Then, in 2004, he had to undergo major surgery. In 2005, it was determined at Rehabilitation Concepts, Inc., that relator was not a viable candidate for vocational rehabilitation.
 {¶ 28} In the magistrate's view, this court need not determine whether the commission abused its discretion regarding the vocational rehabilitation issue put forth by relator.
 {¶ 29} Significantly, following the SHO's statement that an earlier participation in rehabilitation services "may have improved his employment potential," the SHO begins *Page 12 
the next sentence with the words "[e]ven so," thus indicating that the rehabilitation finding was not viewed as critical to the SHO's conclusion that relator can perform sustained remunerative employment.
 {¶ 30} Relator's high school education and relatively young age were found to be vocational assets. Apparently, relator's work history was not viewed as a positive factor because it is "somewhat limited to manual types of jobs."
 {¶ 31} Clearly, relator's high school education and his relatively young age support a denial of PTD compensation as determined by the SHO, notwithstanding the issue regarding vocational rehabilitation. SeeState ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92, andState ex rel. Murray v. Mosler Safe Co. (1993), 67 Ohio St.3d 330.
 {¶ 32} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1